**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZIG ZAG HOLDINGS LLC,<br><br>    Plaintiff,<br>  v.<br><br>GLEN K. HUBBARD, *et al.*,<br><br>    Defendants.<br>_____ /<br>GLEN K. HUBBARD, *et al.*,<br><br>    Cross-Claimants,<br>  v.<br>ZIG ZAG HOLDINGS LLC,<br><br>    Cross-Claim Defendant.<br>_____ / | No. C 13-2643 SI<br><br>**ORDER RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S MOTION TO COMPEL** |

Plaintiff's motion for summary judgment and plaintiff's motion to compel discovery were scheduled for a hearing on April 25, 2013. Pursuant to Civil Local Rule 7-1(b), the Court took the motions under submission. For the reasons set forth below, the Court ORDERS further briefing on plaintiff's motion for summary judgment and GRANTS plaintiff's motion to compel discovery.

**DISCUSSION**

**I.     Plaintiff's motion for summary judgment**

Plaintiff seeks summary judgment on its claims for trademark infringement, unfair competition, false advertising, and trademark dilution. Plaintiff alleges that James Smith, the sole member of plaintiff

Zig Zag Holdings, Inc., purchased the Zig Zag trademark through a court-ordered sale in the bankruptcy proceedings of *In re: Glen Keith Hubbard and Reagan Anne Hubbard*, Case No. BK-N-11-52888 (Bankr. D. Nev.), and that notwithstanding the sale, defendants continue to use, and infringe, the Zig Zag trademark. Plaintiff contends, *inter alia*, that summary judgment is appropriate based on issue preclusion because (1) the bankruptcy court found that the Zig Zag trademark belonged to the Hubbards' estate as an asset to sell, and (2) in the bankruptcy proceedings, the Hubbards raised – without success – the same objections that defendants assert in this case, namely that the Hubbards did not actually own the trademark, and instead that the previous owner of the Zig Zag mark, Richard Wader, had only granted the Hubbards a license to use the mark.

Defendants argue that the bankruptcy proceedings do not have a preclusive effect in this case because the bankruptcy court did not rule on the validity of the Zig Zag trademark registration, and they emphasize the fact that the bankruptcy court's August 9, 2012 order directing the sale of the trademark provided that "[t]he asset is being sold 'as is where is.'" Docket No. 41-1, Ex. 6 (order). It is unclear from defendants' papers whether defendants also contend that the bankruptcy court's order should not be given preclusive effect on the question of *ownership*, as opposed to validity, of the trademark.

The parties have submitted copies of the bankruptcy court's order as well as copies of the Hubbards' objections filed in bankruptcy court, and two transcripts of proceedings before the bankruptcy court. The Court notes that in the bankruptcy court the Hubbards asserted, inconsistently, both that they did not own the trademark and only had a license from Wader; and also that Glen Hubbard owned the trademark but that he had licensed the trademark to others. The Hubbards also represented to the bankruptcy court that the trademark was being infringed.

It is the Court's tentative view that the bankruptcy court's order should be given preclusive effect as to the ownership of the Zig Zag trademark, and thus that Glen Hubbard was the owner of the trademark, that the trademark was an asset of the estate, and that James Smith purchased the trademark through the bankruptcy proceedings. However, it is unclear to this Court whether there are additional transcripts of the bankruptcy proceedings in which the sale of the trademark was discussed. The Court directs the parties to supplement this record with any other materials from the bankruptcy proceedings relating to the sale of the trademark that have not already been provided to the Court, such as the

2

1 trustee's motion to sell assets of the estate and any other transcripts of hearings where the trademark was
2 addressed. The Court also directs the parties to file supplemental briefs of no more than 5 pages
3 addressing the question of the preclusive effect of the bankruptcy court's August 9, 2012 order with
4 regard to *ownership* of the trademark as opposed to the *validity* of the trademark, as well as whether the
5 bankruptcy court proceedings addressed or resolved the question of whether Hubbard had licensed the
6 trademark to defendant Lynn Simon. The parties shall file these supplemental briefs, along with any
7 materials from the bankruptcy court record, no later than **May 5, 2014**. Counsel are reminded to provide
8 the Court with chambers copies of all filings.

## II. Plaintiff's motion to compel discovery

Plaintiff has filed a motion to compel the production of various documents from all defendants. Defendants are Glen Hubbard, Glen Hubbard, Inc. d/b/a/ Zig Zag Bail Bonds, and Lynn Simon d/b/a Zig Zag Bail Bonds. The documents at issue fall into three general categories: (1) financial documents such as tax returns, 1099 forms, ledgers, bank statements, etc.[1]; (2) copies of minutes of Glen Hubbard Inc. and Simon & Tollestrup, Inc.; and (3) documents evidencing communications regarding the subject matter of this litigation. Plaintiff states that the documents are relevant because all defendants have used the Zig Zag mark to operate bail bonds businesses, and to determine damages plaintiff needs to ascertain the income generated as well as the expenses of the bail bonds businesses.

Defendants' opposition to that motion states that a number of the financial documents have been or will be produced. Mr. Hubbard and Ms. Simon have also filed declarations, signed under penalty of perjury, stating that many of the documents sought either never existed (such as documents reflecting communications between defendants about the subject matter of this lawsuit, aside from communications with counsel that are privileged), or that the documents were destroyed in two separate evictions (an August 2012 eviction of the offices of Mr. Hubbard and Glen Hubbard, Inc., and a November 2013 eviction of a building that Ms. Simon owned).

---

[1] The requests seek different types of financial documents depending on the defendant. Some of the requests are directed at Glen Hubbard and Lynn Simon; some are directed at the corporations operated by Hubbard and Simon (defendant Glen Hubbard, Inc., and non-party Simon & Tollestrup, Inc., which is operated by defendant Simon); and one request seeks tax returns for Glen Hubbard's spouse, Reagan Hubbard.

3

1    Defendants also raise several objections to producing any further financial documents. First,
2 defendants contend that they should only have to produce documents covering three years, as opposed
3 to the five year time period sought in plaintiff's requests. Defendants argue that a three year time period
4 is reasonable because of the "short time period that the Plaintiff has purportedly had rights in the Service
5 Mark at issue." Opp'n at 2:23-25.

6    Plaintiff argues that it may be difficult to evaluate industry trends and business cycles with only
7 three years of financial data, particularly during an economic recession. The Court agrees with
8 plaintiff, and finds that a five year time period is reasonable and is not unduly burdensome.

9    Second, defendants object to producing various financial documents, such as individual tax
10 returns or "all documents . . . showing the status of the account(s) for the past five (5) years relating to
11 any business, corporation, limited liability corporation, or other entity owned in whole or in part by
12 you"[2] on the ground that the documents sought are irrelevant, and the corporate tax returns are sufficient
13 for plaintiff to conduct a damages analysis. Defendants also object that these documents are private.

14    Plaintiff argues that the other financial documents are necessary in order to obtain a complete
15 and accurate picture of defendants' finances with regard to the bail bonds businesses. Plaintiff has
16 submitted a report by plaintiff's damages expert, James Proctor, which explains that the corporate tax
17 records are insufficient because those records do not show, *inter alia*, the remuneration to Hubbard from
18 the Zig Zag bail bonds business or any amounts received or paid with regard to licensing the mark to
19 Simon. Docket No. 36-1. Mr. Proctor also states that the bail bonds business is cash intensive and that
20 the potential for underrreporting sales and other income is greater than in a non-cash intensive business,
21 and thus "other third-party and outside sources of information [are] necessary to compute an economic
22 loss." *Id*.

23    The Court finds that plaintiff has demonstrated why the other financial records are necessary to
24 perform a damages analysis. To the extent that defendants object to producing these documents on
25 privacy grounds, the Court finds that plaintiff's need for the information sought outweighs the privacy
26 interest asserted. *See A. Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186, 190 (C.D. Cal. 2006)

---

28    [2] The Court finds that this request covers the Quicken ledger that Hubbard maintains for his business and that was discussed at Hubbard's deposition.

4

1 ("Although there is no federal common law privilege akin to the right of privacy, federal courts
2 ordinarily recognize a constitutionally-based right of privacy that can be raised in response to discovery
3 requests. Resolution of a privacy objection requires a balancing of the need for the information sought
4 against the privacy right asserted."). The Court also concludes that the privacy of the financial records
5 can be maintained through a protective order limiting disclosure to counsel only and requiring
6 destruction of all information (including copies) at the end of litigation. Defendants are ordered to
7 produce all requested financial records that have not yet been produced, including the Quicken files and
8 the manual records Simon described in her declaration.

9 Further, to the extent defendants maintain that they do not have the documents, defendants are
10 ordered to immediately request copies of the tax documents from the Internal Revenue Service and the
11 State of California. *Cf. United States ex rel. Woodard v. Tynan*, 776 F.2d 250, 252 (10th Cir. 1985) (en
12 banc) ("Federal district courts have ordered defendants to request release of their records from other
13 parties maintaining custody of them so that the defendants could comply with discovery obligations in
14 federal civil proceedings. We hold that such an order is within the power of the federal district court and
15 is appropriate in the instant case." (citations omitted)); *Preservation Prods., LLC v. Nutraceutical*
16 *Clinical Labs., Int'l, Inc.*, 214 F.R.D. 494, 496 (N.D. Ill. 2003) ("The fact that [defendant] does not
17 currently have copies in his possession is not significant because he has 'control' of those documents
18 by signing the necessary request form."); *Powell v. Merrimack Mut. Fire Ins. Co.*, 80 F.R.D. 431, 433
19 (N.D. Ga.1978) (ordering plaintiff to sign IRS form granting defendant access to plaintiff's IRS
20 records).

21 Finally, plaintiff's reply brief requests unspecified sanctions against defendants for failing to
22 comply with their discovery obligations. Plaintiff notes that in the declarations submitted by Hubbard
23 and Simon, they both state that on March 24, 2014, they contacted their CPAs to request information
24 sought by plaintiff. The fact discovery cut-off in this case was March 6, 2014, and it is unclear why
25 defendants did not contact their CPAs to request the discovery earlier. As this issue was only first raised
26 in the reply brief, the Court finds that defendants have not had the opportunity to respond and that
27 sanctions on this record are inappropriate. However, the Court is concerned about the possibility that
28 defendants have not fully complied with their discovery obligations. Thus, the Court will require

5

defendants to provide plaintiff with declarations or affidavits detailing the nature of their search to locate responsive documents, and such declarations must address the inquiries made on a request-by-request basis.

Defendants shall produce all further discovery and the declarations described *supra* no later than **May 9, 2014**.

This order resolves Docket No. 36.

**IT IS SO ORDERED.**

Dated: April 25, 2014

SUSAN ILLSTON
UNITED STATES DISTRICT JUDGE